IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville January 27, 2009

## JASON CALVERT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-C-1862     J. Randall Wyatt, Jr., Judge**

---

**No. M2008-00426-CCA-R3-PC - Filed March 26, 2009**

---

The petitioner, Jason Calvert, appeals from the denial of his petition for post-conviction relief.  In this appeal, he claims that he received the ineffective assistance of counsel, which rendered his guilty plea unknowing and involuntary.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Dumaka Shabazz, Nashville, Tennessee, for the appellant, Jason Calvert.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Lisa Naylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 14, 2006, the petitioner, Jason Calvert, pleaded guilty in the Davidson County Criminal Court to three counts of sexual battery by an authority figure, two counts of providing pornography to a minor, two counts of rape, and three counts of solicitation of a minor. Pursuant to a plea agreement with the State, the petitioner received an effective sentence of 10 years to be served as nine months' incarceration followed by probation.

The facts, as summarized by the prosecutor at the plea submission hearing, are as follows:

> [I]f the [S]tate were to go to trial, the [S]tate would be able to provide witnesses that would testify that all these incidences occurred in Davidson County and that Count 1, 2, and 3 involve the defendant

grabbing the penis of a minor child, that Count 1 occurred in May of 2005.

Count 2 occurred in September . . . and October, 2005.

And Count 3 occurred . . . on August 23rd, 2005.

Count 4 is between December, 2003, and December, 2005. That the defendant provided pornography to a minor.

Count 5 and 6 involved the defendant touching the penis of the same child with his mouth. That occurred between July and September of 2005, two separate incidences.

Count 7, this involved the defendant soliciting . . . sex from the same minor between December, 2003, and December, 2005.

Count 8 involved the defendant's touching the penis of the same child between December, 2003, and [200]5.

Counts 9 and 10, 11, 12, 13 are dismissed. . . .

And Count 15 involving the same second juvenile. . . . Count 14 is the defendant attempted to solicit sex from the second juvenile.

Count 16 is the incident in December, 2003, and the December, 2005, where the defendant provided pornography to the second juvenile, minor.

In August 2007, the trial court revoked the petitioner's probation and ordered service of the original sentence in confinement. On November 9, 2007, the petitioner filed a timely petition for post-conviction relief alleging that his appointed counsel performed deficiently and that counsel's deficient performance rendered his guilty pleas invalid.

At the evidentiary hearing, the petitioner testified that he felt pressured to plead guilty because trial counsel told him that he would not get a fair trial because he was a homosexual. He stated that lead trial counsel used "semantics" to convince him to accept the State's offer, explaining,

[W]ith the semantics there were . . . things that were said in . . . writing, like with the discovery, with the charges, with things like the District Attorney would say. . . . I call it propaganda. And it's like where certain things, they'll take it out of context or change a word

-2-

in it or associate it with something else to make it sound worse. And I would say something about that, because I was having issues with a lot of different things like that. And I was told that that's just semantics, that it's just, you know, word games. And I'm like, I think it makes a difference.

He elaborated, "The Judge was saying a lot of stuff. Some of it I caught, some of it I didn't. I was in a fog at the time, I had a lot of different things going through my mind, one being, I can't believe I'm pleading guilty to these charges." He stated that his mother "was kind of hysterical in the back of the courtroom," which added to his confusion.

The petitioner asserted that he agreed to plead guilty to rape, even though he had initially refused, because he was tired and overwhelmed by the process. He said that he "was just trying to do what [he] was supposed to do, which was when the Judge asked [him] questions answer yes and to say guilty when the question was, how do you plead." The petitioner also claimed that he felt rushed to enter the pleas, explaining, "It felt like pressure to me to, you know. Like that you're aggravating the [c]ourt, you know, to continue to carry on with what I was told was just semantics."

The petitioner testified that his trial counsel "made [him] aware of the stuff" associated with entering into the plea agreement but claimed that "there's a whole lot more stuff that [he] was not made aware of." He specifically complained that counsel did not advise him regarding the costs of sexual offender probation. He also complained that counsel did not inform him that he would be subject to 15 years of additional supervision following his release from probation. The petitioner also complained that trial counsel never discussed trial strategy with him and did not file any pretrial motions. The petitioner stated that he did not know that the victims would have been present at trial, claiming, "I thought just a videotape would be shown or something."

The petitioner testified that counsel provided him with the discovery materials, but he nevertheless insisted that he "lacked information." He stated that he was "uncomfortable" with lead trial counsel because, he said, "I continuously asked questions . . . . And after he's answered so many times it felt like he was getting a little agitated or aggravated with me." The petitioner testified that the repeated delays in the case also contributed to his decision to plead guilty, explaining, "I've got a court date and my family's showing up and nothing happens and that went on for four months, every two or three weeks. So that gets a little discouraging and you feel like, okay, you need to do something."

During cross-examination, the petitioner insisted that he did not commit rape, explaining, "I did not perform fellatio. I did say that I had put my mouth on his penis, but that is not fellatio . . . it was on a dare and it was for a matter of seconds." He admitted placing the penis of one of the victims in his mouth on at least two occasions but claimed that he was not guilty of rape, saying, "[T]hat is something that someone may say is semantics." He also admitted touching the victim's penis "through the pants" but denied "fondling" the victim's penis. The petitioner also

-3-

admitted that he knew he "was facing a lot of years" had he gone to trial and that trial counsel negotiated a very favorable plea agreement requiring only nine months of incarceration. The petitioner also conceded that he "knew [he] would be [o]n the sex offender registry," but he claimed that he "did not know that there would be an additional fifteen years of probation after the ten."

On redirect examination, the petitioner insisted, "[T]here is a big difference between what I did and what I said I did and what I was led to plead to." He elaborated, "I think there's a very big difference between just contact from a dare and rape. . . . But, eventually, I was told that that's semantics and word play." The petitioner also claimed that trial counsel did not effectively explain the concept of the "best interest plea" to him, stating that he understood it to mean "you're not admitting to any of that, yet you're still pleading and it's still a charge that is on your record and you're in for." He also complained that he "didn't get . . . the whole violent crime thing."

Lead trial counsel testified that he and co-counsel were appointed to represent the petitioner and that they met with the petitioner on several occasions "to discuss his case, to discuss his defense, to discuss his exposure." Counsel stated that he met with the petitioner on at least seven occasions prior to the entry of the plea either at the jail or the courthouse. He said that they discussed the discovery materials and reviewed the petitioner's videotaped statement to the police. Counsel testified that neither he nor co-counsel saw any basis to file a motion to suppress the statement. Counsel also testified that he discussed in detail with the petitioner what each of the victims would likely say at trial. Counsel described the petitioner's statement as "very damaging" because "he made admissions about touching a child." According to counsel, the petitioner also admitted placing his mouth on one victim's penis on two occasions.

Counsel stated that the only potential defense available would have been to argue that the 16-year-old rape victim consented to the activity. He testified that he engaged in lengthy plea negotiations with the State, the result of which was the agreement under which the petitioner eventually pleaded guilty. Counsel stated that the split confinement sentence imposed under that agreement was "significantly" less than the potential sentence he faced if convicted at trial. Counsel testified that he "did his best to" explain the conditions of the petitioner's release, but he contended that "it's difficult . . . in terms of the sex offender probation, to tell a client exactly what is going to be expected of him." He stated that he did inform the petitioner that "this is a very difficult probation, it is very intense."

During cross-examination, counsel reiterated the difficulty in "trying to get sex offenders to understand exactly how difficult being a sex offender can be." He admitted that he did not provide the petitioner with a copy of the conditions of his probation, but he stated that he was "comfortable in that we talked about this being a very intense serious type of probation. And it would involve things like staying away from children, modifications in terms of where he would live, the sex offender registry."

Counsel stated that he could not recall the petitioner's telling him that he had placed the victim's penis in his mouth on a dare, but he testified that the two discussed the definition of

rape. He stated that he informed the petitioner that "penetration can mean a number of things in the law." He recalled that although the petitioner's homosexuality would not "play in" to the State's proof, the petitioner's spending large amounts of time with the victims "would – in a way that . . . the State would have hammered in terms of grooming." He stated, "It would have been hard to explain how he would have allowed these children access to pornography." Counsel testified that in order to alleviate the petitioner's concerns about pleading guilty to rape, he suggested that those charges be amended to aggravated sexual battery. He recalled that although the State agreed to the amendment, the court pointed out that the petitioner would not be eligible for probation if convicted of aggravated sexual battery.

At the conclusion of the hearing, the post-conviction court took the petition under advisement and denied post-conviction relief in a later-filed, written order detailing its findings of fact and conclusions of law.

In this appeal, the petitioner contends that his trial counsel performed deficiently by "[f]ailing to explain full consequences and ramifications of a plea to a 'Sex Offender' charge;" "[f]ailing to develop and inform [petitioner] of trial strategy, and as a result, [petitioner] felt he had no choice but to take the plea agreement;" and "[f]ailing to take the time necessary to ensure that this was the [petitioner's] choice and not the result of being pressured or rushed into court." He also contends that counsel's deficient performance rendered his guilty plea invalid. The State, of course, submits that the petitioner failed to establish his claims by clear and convincing evidence.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Our supreme court, in setting forth the standard for identifying a constitutionally valid guilty plea, has noted that "before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily." *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969)). Our high court has noted that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43, 89 S. Ct. at 1712), or if the defendant was "incompetent or otherwise not in control of his mental facilities" when the plea was entered. *Id*.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the

defense." *Strickland v. Washington*, 466 U.S. 668, 693 (1984). Although the error must be so serious as to render an unreliable result, *see id.* at 687, it is not necessary that absent the deficiency, the trial would have resulted in an acquittal, *see id.* at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

When a post-conviction petitioner asserts that ineffective assistance of trial counsel resulted in a guilty plea the "prejudice" prong must focus "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985). The petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59-60, 106 S. Ct. at 370.

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner first asserts that counsel failed to inform him that he would be subject to 15 years' supervision following his completion of "sex offender" probation. Although counsel admitted failing to provide this information, the post-conviction court concluded that the petitioner had failed to establish that he would not have pleaded guilty had he been aware of this information. The court accredited counsel's testimony that the petitioner's primary concern was the length of any incarcerative sentence to be imposed and recognized that the sentence afforded the petitioner under the plea agreement was "decades" less than the potential sentence he would have faced following a jury conviction.

Generally, counsel's "failure to advise of the collateral effects of the plea does not" amount to ineffective assistance. *Adkins v. State*, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994). Specifically, counsel's silence regarding "the various consequences of being convicted of a sex offense" does not amount to deficient performance. *See Alan Dale Bailey v. State,* No. M2001-01018-CCA-R3-OC, slip op. at 11 (Tenn. Crim. App., Feb. 8, 2002), *perm. app. dismissed* (Tenn. July 11, 2002); *see also Casey Skelton v. State*, No. E2007-02818-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Aug. 28, 2008); *Rickey Sams v. State*, No. 03C01-9511-CC-00368, slip op. at 5 (Tenn. Crim. App., Knoxville, Nov. 14, 1996) (holding that a guilty plea where the petitioner is not informed about the details of parole eligibility, including the possibility of being ineligible for parole, is not a constitution-based claim). Counsel's accredited testimony established that the petitioner's

primary concern was the avoidance of incarceration rather than the collateral terms of sex offender probation, and nothing in the record refutes counsel's assertion.

The petitioner also asserts that "there was some confusion in the court that gave [him] some concern," and he specifically contends that this "confusion" as well as "the fact that [he] was in a 'fog at the time'" led him to plead guilty to rape even though he did not believe he had committed the offense. The post-conviction court found that counsel accurately and sufficiently explained the charges and potential sentences and that he appropriately communicated the terms of the plea agreement. The court specifically concluded that "despite his disagreement that his actions could be interpreted as criminal behavior, the [p]etitioner was fully and clearly made aware of the specifics of the plea agreement." The record supports the conclusions of the post-conviction court.

Although the petitioner repeatedly insisted that he had not committed the offense of rape, he admitted that he had placed his mouth on the victim's penis. This admission satisfies the elements of rape despite the petitioner's protestations that he had only performed the act "on a dare."[1] Counsel accurately told the petitioner that his actions fit the Code definition of rape. Nothing in the record supports the petitioner's assertions that there was "confusion with the court," that his mother "was hysterical" in the rear of the courtroom, or that he was in "a fog."

Finally, the petitioner asserts that he "felt undue pressure to accept a plea rather than go to trial." He claims that counsel led him to believe that he could not obtain a fair trial because of his homosexuality, that he was "rushed while at court," and that "he and his attorney had not prepared for trial." The post-conviction court accredited counsel's testimony that he "informed the [p]etitioner of the advantages and disadvantages of accepting" the agreement offered by the State and that he "informed the [p]etitioner that he could reject the plea offer and proceed to trial." The court found that "the [p]etitioner . . . presented no evidence which would support his contention that [counsel] pressured him into accepting the plea offer." The court also determined that the petitioner

---

[1]Our Code defines the offense of rape as follows:

Rape is unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;

(2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent;

(3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or

(4) The sexual penetration is accomplished by fraud.

T.C.A. § 39-13-503(a). The law provides no exception for penetration committed "on a dare."

failed to provide evidence "that supported his contention" that counsel "pressured" him "to plead guilty using time constraints as a reason to hurry and accept the plea agreement."

Again, the record supports the conclusions of the post-conviction court. Counsel testified that he and his co-counsel met with the petitioner on a number of occasions to explain the charges he faced, the potential sentences involved, and the possible defenses at trial. Nothing in the record suggests that the petitioner was pressured into accepting the very lenient plea agreement that counsel had negotiated on his behalf. The petitioner's own testimony at the evidentiary hearing belies his assertions that he was unaware of his rights or the consequences of his guilty plea.

Finally, we agree with the post-conviction court's conclusion that the petitioner entered his guilty pleas knowingly, voluntarily, and intelligently. The court found that the petitioner "was represented by two experienced, competent attorneys who adequately explained the criminal proceedings the [p]etitioner was facing and the possible alternatives." The court determined that the petitioner "was fully apprised of the charges against him and the penalty the charges carried." The court found no "merit to the [p]etitioner's contention that he was unable to make an informed and conscious choice to enter the guilty plea." The record fully supports each of these determinations.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE